IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND JACKSON, JR.,

    Petitioner,                      No. CIV S-03-1858 LKK JFM P

   vs.

R. A. CASTRO, Warden, et al.,

    Respondents.                  FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2001 conviction on charges of kidnapping, dissuading a witness by force or threat, and misdemeanor battery. Petitioner claims that (1) there was insufficient evidence to support the conviction for dissuading a witness by force or threat; (2) the trial court erred in admitting evidence of prior incidents of domestic violence; (3) the trial court erred in failing to instruct the jury sua sponte that petitioner's admissions should be viewed with caution; and (4) the trial court erred in instructing the jury with CALJIC No. 17.41.1.[1]

---

[1] Petitioner also claimed that his right to due process was violated by admission of a prior conviction for domestic violence that he suffered in 1995. The claim, raised as ground three in the petition, was dismissed as unexhausted by order filed January 14, 2004. Although he was given an opportunity to do so, petitioner did not seek a stay of this action in order to exhaust state

1

FACTS[2]

**Events of November 1999**

The victim in this case, Stacie S., began living with Jackson in November of 1999. One day during that month, the couple left the courthouse after Jackson had made a court appearance. They stopped and bought alcoholic beverages and sandwiches. Jackson was driving erratically on a mountain road and ignored Stacie's pleas to slow down. When Stacie stomped her foot on the brake out of fear they would crash, Jackson pulled the car over in the turnout area. Ordering Stacie out of the car, Jackson grabbed her feet and dragged her out of the car, allowing her head and body to fall to the ground. He then beat her on the head numerous times, causing her to fall. Stacie was bruised all over – her face was purple and unrecognizable.

During the rest of the trip, Jackson's mood fluctuated between sweetness and fury. In his angry moods, Jackson continued to beat Stacie and drove his elbow into her chest. As a result of Jackson's beatings that day, Stacie sustained bruises all over her body and a cut on her face, which left a permanent scar.

Stacie did not report the 1999 beatings and continued to live with Jackson, moving into a trailer park with him in January 2000.[3]

**Events of April 2000**

In April of 2000, after a bout of drinking, Jackson beat Stacie in a motel room they were sharing in Eureka. In addition to hitting and choking her, Jackson ran his teeth over her face and threatened to bite her nose off, forced her to take her clothes off and threatened to throw her outside naked. The next day he struck her face with a cell phone and told her if she ever tried to get away from him, he would "hurt the people closes to me." Stacie telephoned the police in Humboldt County, and Jackson was arrested.

/////

---

court remedies for that claim. It is therefore not before the court.

[2] The statement of facts is taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Jackson No. C037785 (Jul 1, 2002), a copy of which is attached as Exhibit D to Respondents' Answer, filed July 16, 2004.

[3] In consequence of the events of November 1999, Jackson was charged with assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)) and willfully inflicting corporal injury on a cohabitant, resulting in a traumatic condition (§ 273.5, subd. (e)). The jury deadlocked on these charges and a mistrial was declared.

**Events of October 2000**

As of October 2000, Stacie was still living with Jackson in an ongoing relationship and working as a cashier for the Mad River Store and Bar. One day in October Jackson became upset at Stacie when she asked him not to open a beer. He hit her, choked her, and poured water on her head. He also said that if he went to prison on the Humboldt County charges for which he had been arrested, he would "sit [in prison] for 10 years and figure out what he's going to do to me." Jackson also struck Stacie in the legs and arm with a flashlight, and hit her in the back of the head with a plastic water jug.

The next morning, Jackson told Stacie he would see to it that she would not go to work that day; he struck her in the face, causing an immediate bruise, and demanded that she telephone her employer and quit her job. At Jackson's direction, the couple drove to the bar where Stacie picked up and cashed her final paycheck.

Three days later, on October 16, 2000, Stacie and Jackson drove to the Mad River Bar after drinking beer that morning. When she got to the bar, Stacie took bartender Kay Currier into the back room and showed her the bruises Jackson had inflicted on her body.

Jackson became angry and screamed at Stacie that he wanted to leave with her, grabbing her by the arm. Stacie resisted, telling him she did not want to go with him and that she was afraid. Jackson continued to drag her out of the bar, pulling her by the arm.

Currier called Jim Casten, another employee at the bar, and apprised him of the situation. Casten arrived on the scene to observe Jackson forcibly dragging Stacie toward his truck, as she attempted to resist. Casten told Jackson to let Stacie go and went into his house, where he called 911. When Casten reemerged, he again confronted Jackson and told him to leave Stacie alone. Jackson warned Casten to "stay out of it; I know where you live, . . . I'll get you; you know how I am," whereupon Jackson ripped his coat off and challenged Casten to a fight.

When Casten backed off, Jackson managed to grab Stacie by the arm and shove her into the truck. Jackson drove the truck without headlights past the turnoff to their residence; when Stacie asked Jackson why, he replied "They've already called the cops, and there will be cops here." Soon afterward, Jackson crashed the truck, leaving him moaning and injured. Stacie stumbled out of the truck and started walking toward their trailer when she encountered Sheriff's Deputy Ron Whitman. Whitman saw Jackson walking along the highway, but when the officer attempted to contact him,

Jackson ran away. Whitman encountered Jackson at a store later that night and asked him what had happened. Jackson replied that he had been in a fight with three unidentified people.

**Defense**

Jackson testified in his own defense. He admitted having been convicted of a prior felony, battery on a cohabitant in 1995. Addressing the events of October 16, Jackson claimed that he and Stacie had been consuming liquor at the Mad River Bar. He asked Stacie to drive, since he felt he was too drunk to do so. Stacie did not want to drive, but she never refused to go with him. While admitting the couple argued over who was going to drive, Jackson denied pushing, shoving, or forcing Stacie into the truck. He denied threatening Casten, but did recall telling one bystander to "go back in the bar where he f'g belongs." Jackson professed to have no memory of driving the truck. All he remembered following the argument was walking on the highway with blood all over his head.

(People v. Jackson, slip op. at 2-6.)

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

   A. Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his conviction on the charge of dissuading a witness by force or threat. Specifically, petitioner contends that, while there was evidence that he threatened Casten, there was no evidence that these threat were intended to dissuade Casten from calling the police to report petitioner's treatment of Stacie S. The facts relevant to this claim were set forth by the state court of appeal as follows:

> The charge was based upon Jackson's October 16 encounter with James Casten at the Mad River Bar. On direct examination, Casten testified as follows:
>
> "Q. When you saw Ray Jackson dragging Stacie [S.], what did you do?

/////

5

1  "A. I confronted him and told him – asked him – well, asked him, told him, whatever it was, to leave her alone, let her loose, so on and so forth.

"Q. And when you said that to Ray Jackson, what happened next?

"A. I went back to my house for a second, called 911, and that was about 9:00.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Q. And what did you do after you called 911?

"A. I went back out and confronted him again to leave her alone, because he was still in the process of trying to get her up to the truck.

"Q. Do you know how long of a time period that was?

"A. A couple of minutes.

"Q. And what happened this second time that you confronted Ray Jackson?

"A. *He proceeded to tell me just stay out of it – stay out of it; I know where you live, so on and so forth; I'll get you; you know how I am.*

"Q. So he told you he knows where you live and that he'd get you?

"A. Uh-huh.

"Q. Did you take that as a threat?

"A. Yes, I did.

"Q. Why did you take that as a threat?

"A. Well, after he ripped his coat off and proceeded to come after me, I backed up a few spots – a few feet, because I wasn't going to get that close.

"Q. So he took his coat off?

"A. Uh-huh.

"Q. What did he do after he took his coat off?

"A. He wanted to fight me.

> "Q. And this is after he made the statements to you?
>
> "A. Yes.
>
> "Q. What did you do when he took his coat off and started moving towards you?
>
> "A. I backed up.
>
> "Q. And do you know how far you backed up?
>
> "A. Just a couple of feet.
>
> "Q. What happened after you backed up?
>
> "A. He went back over to Stacie, and she was sitting on the side of the road, and he proceeded to pick her up and get her in the truck." (Italics added.)

(People v. Jackson, slip op. at 6-8.)

Using the state law "substantial evidence" standard of review, the state court of appeal rejected petitioner's sufficiency of evidence claim as follows:

> Section 136.1, subdivision (b) "prohibits preventing or dissuading a witness or victim from (1) reporting the victimization; (2) causing a complaint or similar charge to be sought; and [sic] (3) arresting or causing or seeking the arrest of any person in connection with such victimization. All of these crimes are made a felony where the act is accompanied by force or an express or implied threat of violence upon a witness, . . . (§ 136.1, subd. (c)(1).)" (People v. Hallock (1989) 208 Cal.App.3d 595, 606.)
>
> . . .
>
> The fact that Jackson did not specifically tell Casten "don't report what you see to the police", or words to that effect, is not dispositive. The test is whether a rational jury could find that Jackson's words and conduct constituted a threat of physical harm to Casten if he reported Jackson's conduct to the authorities. In performing this task, "the jury was free to interpret the words spoken from all of the surrounding circumstances of the case." (People v. Mendoza (1997) 59 Cal.App.4th 1333, 1341.)
>
> Here, Casten witnessed Jackson trying to drag Stacie forcibly into the truck; he went inside his house and reemerged, telling Jackson to let her go. In response, Jackson told Casten to "*stay out of it; I know where you live,*" and "I'll get you; you know how I am." (Italics added.) These words "carry with them an inherent

7

> baggage of connotation" (*Mendoza*, *supra*, 59 Cal.App.4th at p. 1344), which clearly suggested to Casten that if he made any attempt to report Jackson's action, Jackson would inflict retributive physical harm upon him. Jackson backed up his threat by ripping off his coat and assuming a fighting stance, emphasizing that he was not using idle words.
>
> A reasonable jury could find that Jackson's threatening words and conduct were designed to intimidate Casten into refraining from reporting his observations to law enforcement. Substantial evidence supports the section 136.1 conviction.

(People v. Jackson, slip op. at 8-9.)

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is only available if it is found that upon the record evidence presented at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. 307, 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. 307, 324 n.16.

As noted above, petitioner contends there is no evidence to support a finding that his threats toward Casten were made with the intent of dissuading Casten from calling the police. Petitioner contends he never attempted to dissuade Casten from calling the police, that Casten never told petitioner that he was going to call the police, and that petitioner's threats were made so that Casten would leave Stacie S. alone. (Petition, filed September 8, 2003, at 5.)

After review of the record herein, this court finds there was sufficient evidence to support petitioner's conviction on this charge. Casten's testimony could lead reasonable jurors to believe that petitioner's threats were intended to dissuade Casten from reporting the attack on Stacie S. to law enforcement officials. The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, applicable principles of United States Supreme Court jurisprudence. Petitioner's first claim for relief should be denied.

B. <u>Evidence of Prior Incidents of Domestic Violence</u>

Petitioner claims that his right to due process was violated by admission of evidence of prior acts of physical abuse by petitioner against Stacie S. in April 2000 and on October 12 and 13, 2000, for which petitioner had not been charged with a crime. The evidence was permitted pursuant to California Evidence Code § 1109, "which permits evidence of a defendant's prior domestic violence in a prosecution for an offense involving domestic violence," (<u>People v. Jackson</u>, slip op. at 10), and California Evidence Code § 352.[4] The state court of appeal rejected this claim on the grounds that (1) the trial court did not err in admitting the evidence under applicable state standards; and (2) "[e]ven if error," admission of the evidence was not prejudicial. (<u>People v. Jackson</u>, slip op. at 11.) With respect to the lack of prejudice, the state court found that the uncharged batteries against Stacie

> were not germane to Jackson's two felony convictions –
> kidnapping and dissuading a witness – and the jury failed to
> convict him in connection with the alleged beating inflicted on
> Stacie in November 1999. Thus, the only conviction on which the
> subject evidence had any bearing was Jackson's misdemeanor
> conviction for battering Stacie in October 2000. But Jackson's
> guilt on that crime was independently corroborated by Kay Currier,
> who testified that Stacie showed her the bruises Jackson had
> inflicted. We conclude the jury would have convicted Jackson of

---

[4] "California Evidence Code § 352 is the rough equivalent of Federal Rule of Evidence 403, stating: 'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' Cal. Evid.Code § 352." <u>Fowler v. Sacramento County Sheriff's Dept.</u>, 421 F.3d 1027, 1033 n.4 (9th Cir. 2005).

the misdemeanor battery even had it not heard evidence of the uncharged acts of domestic abuse.

(People v. Jackson, slip op. at 11-12.)

The United States Supreme Court "'has never expressly held that it violates due process to admit evidence'" of prior bad acts to show that the charged criminal conduct conformed to those acts. Alberni v. McDaniel, 458 F.3d 860, 862-64 (9th Cir. 2006) (quoting Garceau v. Woodford, 275 F.3d 769 (9th Cir. 2001), *rev'd on other grounds*, 583 U.S. 202 (2003) and discussing Estelle v. McGuire, 502 U.S. 62 (1991)).  For this reason alone, petitioner cannot show that the state courts' decisions regarding admission of the so-called propensity evidence of his prior acts of domestic violence against Stacie S. was "contrary to or an unreasonable application of" United States Supreme Court precedent.

Moreover, a state court evidentiary ruling only violates the federal due process clause when admission of the challenged evidence renders a trial fundamentally unfair. See Estelle, at 70 (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).   As the state court of appeal noted, the jury deadlocked on the charges arising from the alleged beatings of Stacie in November 1999, and the misdemeanor battery charges on which petitioner was convicted as a result of the October 16, 2000 incident was "independently corroborated" by other evidence. (See People v. Jackson, slip op. at 11-12.)  After review of the record herein, this court finds that admission of evidence concern petitioner's physical abuse of Stacie in April 2000 and on October 12 and 13, 2000 did not render petitioner's trial fundamentally unfair.  The state court's rejection of petitioner's federal due process claim was neither contrary to, nor an unreasonable application of controlling principles of federal law.  Petitioner's second claim for relief should be denied.

    C.  Jury Instructions

Petitioner's final two claims present alleged errors in the instructions given to the jury.  In ground four of the petition, petitioner claims that the trial court erred in failing to sua

1  sponte instruct the jury with CALJIC 2.71, which, according to the petition, provides:

> An admission is a statement made by the defendant which does not by itself acknowledge his guilt of the crimes for which the defendant is on trial, but which statement tends to prove his guilt when considered with the rest of the evidence.
>
> You are the exclusive judges as to whether the defendant made an admission, and if so, whether statement is true in whole or in part.
>
> Evidence of an oral admission of the defendant not made in court should be viewed with caution.

(Petition, at 15.)  This claim is grounded in the following facts:

> Stacie testified that after forcing her into the truck at the Mad River Bar, Jackson drove past the entrance to their trailer, telling her "they've already called the cops, . . . "  Deputy Whitman also testified that when he asked Jackson later that evening what had happened, Jackson told him he had gotten into a fight with three people.

(People v. Jackson, slip op. at 13.)  Petitioner contends the two statements constituted admissions and, therefore, that the court was required to give CALJIC 2.71 sua sponte.

The state court of appeal rejected petitioner's claim on the ground that the failure to give the instruction was not prejudicial.  (Id. at 14.)  Specifically, the court noted there was no dispute that the statements were made, neither statement amounted to an admission of guilty, and both were "relatively tangential in the context of the substantive charges."  (Id.)  Applying state law standards, the state court of appeal concluded there was no reversible error in the failure to give the instruction.  (Id. at 14-15.)

A challenge to jury instructions does not generally state a federal constitutional claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  Habeas corpus is unavailable for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  However, a

11

1  "claim of error based upon a right not specifically guaranteed by the Constitution may
2  nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire
3  trial that the resulting conviction violates the defendant's right to due process." Hines v.
4  Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir.
5  1980), cert. denied, 449 U.S. 922 (1980)); see also Lisenba v. California, 314 U.S. 219, 236
6  (1941). To prevail, petitioner must demonstrate that the instructional error "'so infected the
7  entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62,
8  72 (1991) (quoting Cupp, 414 U.S. at 147). Petitioner's burden is "especially heavy" when the
9  court fails to give an instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

After review of the record herein, this court finds that the failure to instruct the jury with CALJIC 2.71 did not render petitioner's trial fundamentally unfair. The state court of appeal's rejection of this claim was neither contrary to, nor an unreasonable application of applicable principles of federal law. Petitioner's fourth claim for relief should be denied.

Petitioner also challenges the use of CALJIC 17.41.1, which was given at petitioner's trial as follows:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or express an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of other jurors to immediately advise the court of such a situation.

(People v. Jackson, slip op. at 15.) In Brewer v. Hall, 378 F.3d 952, 956 (9th Cir. 2004), the United States Court of Appeals for the Ninth Circuit held that there is no decision of the United States Supreme Court establishing "that an instruction such as CALJIC 17.41.1 violates an existing constitutional right." Petitioner's claim is foreclosed by the decision in Brewer and should be denied

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 26, 2006.

_/s/ John F. Moulds_
UNITED STATES MAGISTRATE JUDGE

12
jack1858.157